**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>ZACHRY HOLDINGS, INC., et al1<br><br>     Debtor. | Chapter 11<br><br>Case No. 24-90377 |
| ZACHRY HOLDINGS, INC.,<br><br>     Plaintiff,<br>v.<br><br>TIMMY BRIGNAC AND SHONDA BRIGNAC,<br><br>     Defendants. | Adv. Pro. No. 24-03146 |

**CLEAN HARBORS' EMERGENCY MOTION FOR ORDER DECLARING THE AUTOMATIC STAY EXTENDS TO NON-DEBTOR DEFENDANT IN *BRIGNAC V 3M COMPANY ET AL.*, 127-046 , AND, ADDITIONALLY OR IN THE ALTERNATIVE,  GRANTING PRELIMINARY INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER ENJOINING CONTINUED PROSECUTION OF OR EXPANSION OF THE SAME**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on July 24, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

NOW INTO COURT, through undersigned counsel, come Clean Harbors, Inc., Clean

Harbors Industrial Services, Inc., and HPC Industrial Services, LLC (collectively, "Clean

1

Harbors"), who presents this emergency motion seeking orders substantially in the forms attached hereto as Exhibit A (the "TRO Order") and Exhibit B (the "Preliminary Injunction Order").

The TRO Order grants a temporary restraining order staying the continued prosecution of the Louisiana state court matter styled *Brignac v. 3M Company, Shell Catalysts & Technologies LP; Cat Tech, LLC; Turner Industries Group, LLC; Brock Services, LLC; Anco Insulations, Inc.*, 127-046 (La. 10/15/2019) (the "*Brignac* Suit"). The Preliminary Injunction Order (a) extends the automatic stay to prohibit the prosecution of the *Brignac* Suit against Clean Harbors, and, additionally or in the alternative, (b) grants a preliminary injunction pursuant to § 105 of Title 11 of the United States Code (the "Bankruptcy Code") halting the continued prosecution or expansion of the *Brignac* Suit against Clean Harbors during the pendency of the Debtors' Chapter 11 case.

This motion is filed contemporaneously with Clean Harbors' Adversary Complaint in Intervention for Declaratory and Injunctive Relief. In support of this motion, Clean Harbors respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

Clean Harbors files this Motion to achieve the intended effect of the automatic stay with respect to the *Brignac* Suit. As set forth in the emergency motion filed by the Debtors, and because any judgment in the *Brignac* Suit is, in effect, a judgment against the Debtors, the continued prosecution of the *Brignac* Suit will directly impact property of the estate and impede the Debtors' Chapter 11 efforts and obligations. Thus, extending the automatic stay as requested in this Motion will benefit the Debtors' estate and all creditors.

Clean Harbors seeks this relief on an emergency basis because trial in the *Brignac* Suit is set to begin on August 5, 2024. Despite multiple attempts to reach an agreed stay of the *Brignac* Suit to reflect what Clean Harbors believes is the intended scope of the automatic stay, Plaintiffs,

2

Timmy Brignac and Shonda Brignac (the "*Brignac* Plaintiffs"), have steadfastly refused. In addition, the Louisiana court in the *Brignac* Suit has indicated he will only recognize the automatic stay if the relief requested in this motion is granted by the Bankruptcy Court.

The requested relief will allow Debtors to pursue their objective of efficiently concluding the Chapter 11 cases, without the distraction, costs, and potential liability related to this pre-petition litigation, so that the Debtors can emerge from bankruptcy and continue their business.

## **RELIEF REQUESTED**

By virtue of the Debtors' voluntary Chapter 11 petition filed in this Court, the *Brignac* Suit is automatically stayed against the Debtors pursuant to Section 362 of the Bankruptcy Code. To realize the intended benefit of the stay and enable Debtors to pursue their reorganization objectives in the Chapter 11 case the Debtors need and therefore seek additional relief. Therefore, Debtors have commenced, and Clean Harbors has intervened in, this adversary proceeding to seek declaratory and injunctive relief pursuant to Rules 7001(7), 7001(9), 7024, and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a) and 362(a) of the Bankruptcy Code.

## I.     BACKGROUND

On May 21, 2024, Zachry Holdings, Inc. and its debtor affiliates (collectively, the "Debtors") filed a voluntary petition under Chapter 11.[1] On July 20, 2024, the Debtors filed an adversary complaint and associated emergency motion seeking (a) to have this Court declare the automatic stay extends to an affiliated non-debtor, JVIC Catalyst Services, LLC ("JVIC") and (b) additionally or alternatively, for injunctive relief.[2]

---

[1] Case No. 24-90377.
[2] Adv. Pro. No. 24-03146, Doc. 1.

The relief sought by JVIC is a stay of the proceedings in a tort suit brought by the *Brignac* Plaintiffs, currently pending in Louisiana's 23rd Judicial District Court for the Parish of Ascension (the "*Brignac* Suit"). The *Brignac* Plaintiffs allege that, during Mr. Brignac's employment at the Shell Chemical Plant in Geismar, Louisiana (the "Plant") between 1987 and 2019, he was exposed to various toxic substances and that, as a result of such exposures, he has developed pneumoconiosis.[3]

The *Brignac* Suit is set for trial on August 5, 2024. As of this filing, only three defendants remain in the *Brignac* Suit—JVIC, Clean Harbors, and Brock Services, LLC ("Brock"). Although the *Brignac* Plaintiffs' claims (including Mr. Brignac's alleged diagnosis) have evolved over time, the *Brignac* Plaintiffs currently allege that, during catalyst "turnarounds,"[4] the activities of JVIC, Clean Harbors, Brock, and their respective predecessors-in-interest exposed Mr. Brignac to hazardous levels of respirable silica and that, as a result of such exposures, Mr. Brignac has developed silicosis (a form of pneumoconiosis).

The *Brignac* Plaintiffs advance two theories of liability against JVIC in the Louisiana proceeding—first, a direct negligence claim against JVIC for its injury-causing acts and omissions; second, a successor liability claim for the alleged injury-causing acts and omissions of corporate entities the *Brignac* Plaintiffs allege are the predecessors-in-interest of JVIC. Among those predecessors-in-interest is Clean Harbors, Inc., which sold the entirety of its U.S.-based catalyst operations to JVIC in 2016.[5]

---

[3] Despite naming numerous defendants, the Brignacs did not initially name either JVIC Catalyst or Clean Harbors as defendants. Eventually, on April 5, 2021, Plaintiffs amended their pleadings to name JVIC Catalyst as a defendant. Finally, on December 28, 2023, Plaintiffs added Clean Harbors as a defendant.

[4] Periodic maintenance shutdowns.

[5] Exhibit 1 (the "2016 Purchase Agreement").

Regarding successor liability, the overwhelming majority of Mr. Brignac's alleged exposure to respirable silica occurred between 1988 and 1998, when the *Brignac* Plaintiffs allege Mr. Brignac was personally involved in catalyst turnarounds at the Plant. Plaintiff has testified that, during that period, catalyst turnaround activities at the Plant were conducted not by JVIC or Clean Harbors but instead by Catalyst Technologies, Inc. The *Brignac* Plaintiffs contend that, Clean Harbors (in 2009) and JVIC (in 2016) became successors-in-interest to, and thereby acquired the liabilities of, Catalyst Technologies, Inc.

JVIC and Clean Harbors share a common defense to this claim. In 2002, Catalyst Technologies, Inc., entered into an asset purchase agreement under which it sold some—but not all—of its assets to another company, Cat Tech, Inc. JVIC and Clean Harbors contend that, because of that transaction, neither Clean Harbors nor JVIC is a successors-in-interest to any liabilities of Catalyst Technologies, Inc. under *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973). To assert that defense, Clean Harbors and JVIC jointly filed a motion for summary judgment, which remains pending as of the date of this filing.

Clean Harbors also has two further defenses to liability not available to JVIC Catalyst. First, in selling the entirety of its U.S.-based catalyst operations to JVIC in 2016, Clean Harbors transferred to JVIC all liabilities alleged by the *Brignac* Plaintiffs against Clean Harbors. Second, Mr. Brignac was not exposed to a hazardous level of respirable silica during the relevant time periods.

This second defense is not available to JVIC because it undermines JVIC's cross-claim against Clean Harbors for defense and indemnity. In its cross-claim, JVIC contends that, under Section 8.02(i) of the 2016 Purchase Agreement, Clean Harbors is obligated to defend and indemnify JVIC because the *Brignac* Plaintiffs' claims involve the "handling" (sandblasting) of

5

a "Hazardous Material" (respirable silica), as that term is defined by Article I of the 2016 Purchase Agreement. Clean Harbors' defense to the *Brignac* Plaintiffs' claim and to JVIC's cross-claim is that respirable silica is not a Hazardous Material *per se*; rather, respirable silica may *become* a Hazardous Material above a certain exposure level. Clean Harbors contends that Plaintiff cannot establish he was exposed to respirable silica by Clean Harbors (or any predecessor-in-interest) at a hazardous level and that, thus, JVIC is not entitled to defense and indemnity; and neither the *Brignac* Plaintiffs nor JVIC can prove that Mr. Brignac was exposed at any time to a hazardous level of respirable silica.

The remainder of Clean Harbors and JVIC's defenses at trial are aligned and heavily reliant on JVIC's participation. In the two-and-a-half years before Clean Harbors' joinder in the *Brignac* Suit, JVIC participated in extensive fact and expert discovery, retained multiple expert witnesses, and developed nuanced defenses to liability, causation, and damages. But while JVIC has been an active participant in the *Brignac* Suit since April 2021, Clean Harbors was not joined and able to participate in discovery until December 2023. Since that time, Clean Harbors has been in a race to catch up and, of necessity, has been reliant on JVIC to lead the aligned defenses against the *Brignac* Plaintiffs' claims. As a result, if the stay is not extended to Clean Harbors, it will be forced to defend the *Brignac* Suit on these issues from disadvantaged ground, which could irreparably harm not only Clean Harbors but, by extension, also the Debtors and their estates.

Clean Harbors respectfully submits that, considering these claims and defenses, and for the reasons that follow, a stay of the *Brignac* Suit is both consistent with the purpose of the automatic stay and serves the interests of justice.

## II.     LAW AND ARGUMENT

### A.     The Court May—and Should—Extend the Bankruptcy Code § 362 Automatic Stay to *Both* JVIC and Clean Harbors

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012). The purpose of the automatic stay is to "give the debtor a 'breathing spell' from his creditors, and, to protect creditors by preventing a race for the debtor's assets." *In re Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986). 21. It is well-settled that Bankruptcy Code § 362 may apply to non-debtors. *See, e.g.*, *In re HSMKennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor."). In certain situations, a lawsuit against one entity necessarily implicates another. Accordingly, applying § 362 to non-debtor third parties when such relationships exist aligns with the statute's fundamental purpose of protecting the debtor because it shields the debtor from litigation where a "judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001); *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010) (recognizing that, in the Fifth Circuit, the automatic stay should be extended "when there is a formal or contractual relationship between the debtor and non-debtors such that a judgment against one would in effect be a judgment against the other"); *Nat'l Oilwell Varco, L.P. v. Mud King Prod., Inc.*, 2013 WL 1948766, at *2 (S.D. Tex. May 9, 2013) (same).

Such is the case here. It is undisputed that, because of their contractual and structural relationships, a judgment against JVIC is, in effect, a judgment against the Debtors. Similarly,

7

under the terms of the 2016 Purchase Agreement (which transferred all liabilities from Clean Harbors to JVIC), a judgment against Clean Harbors is, in effect, a judgment against JVIC and, through it, the Debtors. Thus, in prosecuting their claims against Clean Harbors, the *Brignac* Plaintiffs are essentially prosecuting a claim against the Debtors and thereby attempting to exercise control over the Debtors' property. Moreover, because JVIC's cross-claim for defense and indemnity turns on a factual question that, of necessity, will be raised and litigated during any trial between the *Brignac* Plaintiffs and Clean Harbors (*i.e.*, whether Mr. Brignac was exposed to a "hazardous" level of respirable silica), and because resolution of that issue would arguably be dispositive of JVIC's cross-claim for defense and indemnity, extension of the stay to JVIC but not to Clean Harbors would create a scenario in which that dispositive factual issue could be resolved against JVIC but in which JVIC was not participant. Accordingly, extension of the automatic stay to *both* JVIC *and* Clean Harbors is appropriate.

> **B.    The Court Should Enjoin the *Brignac* Suit Against Clean Harbors, Pursuant to Bankruptcy Code § 105, in Order to Ensure the Debtors Reap the Benefits of the Automatic Stay and to Serve the Interests of Justice.**

Bankruptcy Code § 105(a) empowers this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Code § 105(a). The Fifth Circuit has confirmed this Court has "broad discretionary powers" under this section, including the authority "to stay proceedings against nonbankrupt entities." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n.3 (5th Cir. 1987). These broad discretionary powers include issuing injunctions to stay lawsuits against non-debtors. *See In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995) (holding that an injunction is appropriate when "the non-debtor and the debtor enjoy such an identity of interests that the suit against the no-debtor is essentially a suit

against the debtor" and "when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization").

Injunctive relief is appropriate because each of the four factors required to obtain it is satisfied: (1) a substantial likelihood of irreparable injury to Debtors absent an injunction; (2) a substantial likelihood that Debtors and Clean Harbors will succeed in this adversary proceeding on the merits; (3) a balancing of the equities favors Debtors and Clean Harbors; and (4) the injunction would serve the public interest. *See, e.g.*, *In re Commonwealth Oil Refining Co., Inc.*, 805 F.2d at 1188–89; *In re FiberTower Network Sen's. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012).

1.      **If the *Brignac* Suit is allowed to continue against Clean Harbors, there is a substantial likelihood of irreparable injury to Debtors.**

If the Court does not stay or enjoin the continued prosecution or expansion of the *Brignac* Suit against Clean Harbors, the Debtors will suffer irreparable injury because any judgment would ultimately implicate the Debtors and their estates. Moreover, to the extent the *Brignac* Suit is stayed as to JVIC but not as to Clean Harbors, issues dispositive of JVIC's cross-claim for defense and indemnity will be litigated in JVIC's absence. Accordingly, absent an injunction, there is a high likelihood the Debtors and their estates would suffer irreparable injury. *See In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 525 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021) (holding bankruptcy courts are permitted to enjoin lawsuits where, as here, "the non-debtor and the debtor enjoy such an identity of interests that the suit against the non-debtor is essentially a suit against the debtor," and "when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization") (quoting *In re Zale Corp.*, 62 F.3d at 761).

9

There is also a substantial likelihood of irreparable injury to Clean Harbors. JVIC has been a party to the *Brignac* Suit two-and-a-half years longer than Clean Harbors. In that time, JVIC participated in the litigation as the successor-in-interest to Clean Harbors' liabilities. In that role, JVIC participated in extensive discovery (thousands of pages of documents and numerous fact and expert depositions), retained multiple crucial defense experts (medical, industrial, forensic, and economic), and developed nuanced defense strategies. Consequently, Clean Harbors has developed a trial strategy that is largely reliant upon JVIC's ability to present evidence, marshal witnesses, and advance arguments at trial. If the stay is extended to JVIC but not to Clean Harbors, Clean Harbors will be left without the litigation partner on whose past and future efforts Clean Harbors has justly relied since being added as a party less seven months ago. Indeed, Clean Harbors will be forced to scramble to secure witnesses and evidence, and to bear suddenly and single-handedly *all* defense costs (including the retention and preparation of experts with whom it has been unable even to consult before trial). In sum, if the *Brignac* Suit proceeds to trial without JVIC, Clean Harbors, at best, will be forced to assume, only days before trial, defenses Clean Harbors has relied on JVIC to assert and support; more likely, Clean Harbors will simply be deprived of those defenses in any meaningful sense—increasing the risk of an adverse judgment that, in effect, would be a judgment against JVIC and, through it, the Debtors.

        **2.**      **Clean Harbors has a substantial likelihood of success on the merits of this adversary proceeding.**

Fifth Circuit cases have determined the basis of the "substantial likelihood" element is on "the purpose of the requested injunction." *In re FiberTower Network Servs. Corp.*, 482 B.R. at 182 (internal citations omitted). Courts must determine whether they are both authorized and likely to grant the requested relief. *Id.* at 183. The Bankruptcy Court is authorized to issue a declaration extending the stay to JVIC and Clean Harbors as well as an injunction halting the

*Brignac* Suit. Moreover, for all the reasons explained herein, the Debtors and Clean Harbors are likely to prevail on the merits of their requests, including but not limited to because of the irreparable harm the Debtors will suffer absent a stay extension and injunction. *See* Bankruptcy Code § 105(a); *In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 n. 3; *In re Zale Corp.*, 62 F.3d at 761.

### 3. The irreparable harm to the Debtors far outweighs any risk of harm to the Brignac Plaintiffs.

As explained in detail herein, the Debtors will suffer irreparable harm if the *Brignac* Suit is not enjoined. The *Brignac* Plaintiffs, on the other hand, will suffer limited harm from pausing their litigation for a limited period of time while the Chapter 11 case proceeds. See, *In re Am. Film Techs., Inc.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) (weighing this factor in favor of enjoining the litigation where non-debtor plaintiff was "not being asked to forego his prosecution against the individual defendants, only to delay it"). Moreover, any documents or information required by the *Brignac* Plaintiffs will be preserved during this waiting period, and none of the *Brignac* Plaintiffs' rights will be negatively affected in a material way because they will be free to prosecute their claims at a later date. Additionally, because the *Brignac* Plaintiffs have already settled with numerous other defendants in the *Brignac* Suit, the *Brignac* Plaintiffs have already obtained substantial recovery on their claims (most of which are claims for future losses that have not yet accrued). Accordingly, the risk of harm to the *Brignac* Plaintiffs, if any, is small.

### 4. Enjoining Brignac serves the public interest by facilitating an efficient and expedient resolution to the chapter 11 cases.

Injunctive relief will facilitate the Debtors' expedient and successful conclusion of their bankruptcy proceedings, which is a benefit to all interested parties. There is a clear public interest in ensuring that bankruptcy proceedings go smoothly and that any negative outcomes are minimized. *See, e.g.*, *In re FiberTower Network Services Corp.*, 482 B.R. at 189 (holding that

299651612v.3

injunctions facilitate that public interest in chapter 11 cases); *Venzke Steel Corp. LLA, Inc.* (*In re Venzke Steel Corp.*), 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992) (same); *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A.* (*In re Lazarus Burman Assocs.*), 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) (same); *SAS Overseas Consultants v. Benoit*, No. Civ. A. 99–1663, 2000 WL 140611, at \*5 (E.D. La. Feb. 7, 2000) (same). Here, extending the stay in the *Brignac* Suit will allow the Debtors time to focus on moving towards a successful resolution of these cases.

Pursuant to the authority granted to this Court by Bankruptcy Code § 105(a), Clean Harbors respectfully requests the Court enjoin the continued prosecution or expansion of *Brignac* Suit during the pendency of the Debtors' Chapter 11 cases.

### C.   The Court Should Issue a Temporary Restraining Order Enjoining the *Brignac* Suit in its entirety.

"A [temporary restraining order] is a 'highly accelerated and temporary form of preliminary injunctive relief.'" *In re Ozcelebi*, No. 20-70295, 2022 WL 1529359, at \*3 (Bankr. S.D. Tex. May 13, 2022) (quoting *Island Peak Grp., LLC v. Stark*, No. 3:22-CV-00838-N, 2022 WL 1265929, at \*3 (N.D. Tex. Apr. 27, 2022)). "The standard for issuing a [temporary restraining order] is the same as the standard for issuing a preliminary injunction." *Id.* (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). "However, TROs are generally restricted to 'preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.'" *Island Peak Grp., LLC*, 2022 WL 1265929, at \*3 (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974)).

For the same reasons discussed herein that a preliminary injunction is warranted, Clean Harbors also requests that, on an emergency basis, the Court issue a temporary restraining order prohibiting the continued prosecution or expansion of the *Brignac* Suit. The Debtors need relief

immediately because trial in the *Brignac* Suit is set to begin on August 5, 2024. On June 12, 2024, the *Brignac* Plaintiffs' counsel informed the Debtors' counsel that the *Brignac* Plaintiffs are unwilling to stay the matter. On July 11, 2024, the Louisiana court overseeing the *Brignac* matter informed the parties it would not stay the matter absent an order from this Court. A temporary restraining order is necessary to prevent immediate and irreparable harm to Debtors, their estates, and their stakeholders. Clean Harbors therefore respectfully requests this Court enter a temporary restraining order enjoining continued prosecution or expansion of the *Brignac* Suit.

## BASIS FOR EMERGENCY RELIEF

Clean Harbors respectfully requests emergency consideration of this motion in accordance with Bankruptcy Local Rule 9013-1(i). In particular, trial in the *Brignac* Suit is set to begin in Louisiana in only a few weeks, on August 5, 2024. To the extent practicable, Debtors have requested this Court enter a TRO to enjoin the *Brignac* court from proceeding as to JVIC Catalyst by 5:00 p.m. (prevailing Central Time) on July 24, 2024. Clean Harbors joins that request as to its motion. The relief requested in this motion is critical to preserving the Debtors' estates. Accordingly, Debtors respectfully request the Court approve the requested relief on an emergency basis.

## NOTICE

Clean Harbors will provide notice of this motion to: (a) the U.S. Trustee for the Southern District of Texas; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of Texas; (d) the state attorneys general for the states in which the Debtors operate; (e) the Internal Revenue Service; (f) the Prepetition Agent, (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d), (h)

299661612v.3

JVIC, and (i) the *Brignac* Plaintiffs. In light of the nature of the relief requested, no other or further notice need be provided.

## III.     CONCLUSION

For the foregoing reasons, Clean Harbors respectfully requests this motion be granted and the *Brignac* Suit be stayed.

RESPECTFULLY SUBMITTED this 22nd day of July, 2024, in Houston, Texas.

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**

/s/ Kent M. Adams
Kent M. Adams
Texas Bar No: 00869200
USDC SD Texas Houston Bar No: 246
909 Fannin Street, Suite 3300
Houston, Texas 77010
Telephone: (713) 353-2000
Facsimile: (713) 785-7780
Email: kent.adams@wilsonesler.com

## CERTIFICATE OF SERVICE

I certify the foregoing pleading has been served through the Court's CM/ECF system on all counsel of record this 22nd day of July 2024.

/s/ Kent M. Adams
Kent M. Adams

299651612v.3